UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-14033-CR-GRAHAM/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DARRELL LAVERN REAVES,

    Defendant.
_____/

REPORT AND RECOMMENDATION ON THE GOVERNMENT'S
*ORE TENUS* MOTION FOR NO-CONTACT ORDER

**THIS CAUSE** comes before this Court upon referral of the above-referenced Motion. The Court has considered the Motion, arguments of counsel, and the pertinent portions of the record. Having done so, and being otherwise fully advised in the premises, this Court recommends as follows:

    1.    On November 27, 2017, Defendant was charged with violating supervised release by committing domestic violence battery against his then-girlfriend, Amina Wilson, and her teenaged daughter, J.T., on September 17, 2017. [D.E. 907]. Defendant appeared before the undersigned for initial appearance on December 5, 2017. [D.E. 912]. At the initial appearance, the Government requested detention. The undersigned conducted a detention hearing. During the hearing, defense counsel represented that Ms. Wilson had asked the state to drop the charges. Defense counsel also indicated that Ms. Wilson and Defendant have a four-year-old child together whom they co-parent but they had not had contact with each other since the incident occurred (more than two months prior) in light of the pending charges. The Probation Officer confirmed this, saying she had spoken with Ms. Wilson who said Defendant was not contacting

her and instead was seeing their four-year-old daughter at daycare. [D.E. 932:22]. Based on these representations, as well as Defendant's history of compliant behavior on supervised release and his maintenance of stable employment, this Court set a bond that included a special condition prohibiting Defendant from having contact with Ms. Wilson or J.T. [D.E. 932:22-23]. The Government requested as an additional condition of bond that Defendant's contact with his four year old daughter be supervised. [D.E. 932:24-25]. The Court declined that request. *Id.*

2. Thereafter, Defendant appeared before this Court on three additional occasions: January 8th, January 16th, and January 23rd. At no time did any party raise any concern about Defendant violating this Court's no-contact condition of bond. In fact, Probation advised that Defendant was "compliant with everything." [D.E. 918:81].

3. Ms. Wilson testified at the evidentiary hearing on January 8, 2018. She made clear that she did not wish to pursue charges against Defendant and had filed an affidavit in state court to have the charges dismissed. [D.E. 918:66-67]. Based on her demeanor and answers, it appeared to this Court that she also did not wish to cooperate with the prosecution of the federal supervised release violations, despite being under subpoena to testify. She repeatedly told the prosecutor she could not remember any details and that Defendant had not harmed her. [D.E. 918:56]. Ms. Wilson's reluctance to cooperate was so apparent that the Government had to impeach her with her prior statements and essentially treat her as an adverse witness to get through her testimony. [D.E. 918:55-63]. This Court observed that Ms. Wilson came to Court for the second day of the hearing, although she was not testifying. This Court presumes that she came in support of the Defendant.

4. This Court issued a Report and Recommendation recommending that Defendant be found to have violated supervised release by punching Ms. Wilson multiple times on

September 17, 2017 and "slamming" her daughter, J.T., to the ground when J.T. tried to defend Ms. Wilson. [D.E. 925]. On April 19, 2018, Judge Donald L. Graham adopted the undersigned's Report and Recommendation. [D.E. 928].

5. On April 20, 2018, Judge Graham conducted a final hearing and sentenced Defendant to seven months' imprisonment, to be followed by one year of supervised release. Defendant was given seven days to self-surrender. During the sentencing hearing, the Government asked Judge Graham to enter an order prohibiting Defendant from contacting or being within 1,000 feet of Ms. Wilson or J.T during his supervised release. In discussing this request, the parties advised Judge Graham that—at some point during the past few months—Ms. Wilson had moved in with an aunt who apparently lives next door to the Defendant. Judge Graham asked whether the undersigned was aware of this and the parties answered affirmatively. Due to the undersigned's familiarity with the case and the no-contact bond condition set by this Court, Judge Graham referred the matter to the undersigned for a report and recommendation.

6. This Court held a hearing on the matter that same day. Before addressing the Motion, this Court notes that it has reviewed the transcript of the initial appearance and detention hearing held on December 5, 2017. [D.E. 932]. It also has reviewed the transcripts from both days of the evidentiary hearing and the third day of closing arguments. [D.E. 918, 920, 924]. This Court does not see anywhere in the record where any party advised the undersigned that Defendant resided next door to Ms. Wilson's aunt or any other relative of Ms. Wilson for that matter. Nor did the parties advise the Court that Ms. Wilson had moved in with that aunt and was living next door to the Defendant while this case was pending. This Court certainly would have remembered that information had it been disclosed. At the April 20th hearing before the undersigned, the attorney for the Government advised that she had contacted Ms. Wilson during

the intermission between the two hearings and learned that Ms. Wilson has now moved out of her aunt's house and no longer lives next door to the Defendant. Yet, this Court finds the fact that Ms. Wilson actually moved next door to him in the first place (while this case was pending, and despite the existence of a no-contact order) probative of the question at hand.

7. The Government clarified the request for a no-contact order as follows: First, the order should prohibit Defendant from having contact with Ms. Wilson or J.T. during the seven days before Defendant's surrender date. Second, Defendant should be prohibited from having contact with Ms. Wilson or J.T. by phone, letter, or any other means of communication while he is serving his sentence of imprisonment. Third, Defendant should be prohibited from having contact with Ms. Wilson or J.T. as a condition of his year-long supervised release after he is released from prison. Fourth, Defendant should be ordered to stay at least 1,000 feet away from Ms. Wilson or J.T as a condition of his year-long supervised release after he is released from prison.

8. Regarding the prohibition on contact from now to Defendant's surrender date, this Court pointed out at the hearing that such an order already exists. Defendant remains on bond until he surrenders, and that bond already prohibits him from contacting the victims. This Court therefore advised Defendant on the record at the April 20th hearing that his bond conditions were still in effect and he is prohibited from having contact with Ms. Wilson or J.T. prior to his surrender date.

9. Next, the Court considered whether Defendant should be prohibited from having contact with Ms. Wilson during his incarceration or period of supervised release. This Court does not believe such an order is warranted here. According to the record evidence, Defendant and Ms. Wilson have been romantically involved for five years (essentially during the entire

term of Defendant's supervised release), they have raised a four-year-old child together during that time, and have lived together as a family without incident for two of the last five years of their relationship. J.T. testified credibly at the hearing that this was the first incident of domestic violence between Defendant and her mother as far as she knew. [D.E. 918:16]. In defense counsel's words, this is not a "running conflict that continues to go on and on and on," or a situation where Defendant is "constantly terrorizing" someone. [D.E. 932:20-21]. Instead, it appears to be an isolated (albeit serious) event that Defendant escalated into violence and for which he is now about to serve a period of incarceration. When this Court observed Ms. Wilson, she did not appear to feel threatened by the Defendant and in fact seemed to want to support him. She has repeatedly made clear that she is not in favor of any prosecution of his misconduct. She filed an affidavit to have the state charges dismissed, denied that he was violent towards her at the evidentiary hearing before this Court, and has not asked for any no-contact or stay-away orders. To the contrary, the Court now learns that Ms. Wilson decided to move next door to Defendant while this case was pending despite the no-contact condition of his bond. Both Defendant and Ms. Wilson claim there has been no contact and there is no evidence in the record to dispute that. They claim Defendant takes care of his four-year-old child by communicating with the aunt and visiting the child at day care. This Court does not know whether that is true, but what is apparent is that Ms. Wilson does not seek a no-contact order, does not feel threatened by the Defendant, and does not mind being within 1,000 feet of him (since she took it upon herself to move next door to him and came to court the second day of the hearing although she was not needed to testify). Requiring Defendant to stay 1,000 feet away from someone who elected to move next door to him, who does not want such an order to exist, and with whom he shares a child is not warranted on the facts of this case. Nor is there a need to prohibit contact

between Defendant and Ms. Wilson while he is incarcerated. If Ms. Wilson does not wish to receive his collect phone calls, she can reject them. If she finds his communications harassing or objectionable, she can advise the Probation Officer, who can then advise the Court. This Court finds nothing in the record to suggest Ms. Wilson does not want the option of having contact with her child's father while he is incarcerated or when he gets out of prison.

10. The second victim, J.T., is a different matter. J.T. was a 17 year old minor when Defendant committed battery against her by slamming her to the ground when she attempted to come to her mother's defense. She has since turned 18 years old. She testified that her family lived with Defendant for a few years before the incident and he had never done anything like this before. [D.E. 918:9, 16]. This Court does not know J.T.'s preference about a no-contact order. As a result, the Court recommends erring on the side of caution and including as a condition of supervised release that Defendant is not to have contact with J.T., whose full name is in the record. This Court does not, however, believe a 1,000-foot requirement is needed. A thousand feet covers the length of three and one third football fields, which is a significant distance. Given the facts of this case, it is possible that on occasion the Defendant will unintentionally be within 1000 feet of J.T without having contact with her. For one thing, apparently J.T.'s relative (Ms. Wilson's aunt) lives next door to Defendant's residence. If J.T. goes to the aunt's home, Defendant may inadvertently be within 1,000 feet of her as he comes in and out of his own residence. If J.T. resides with Ms. Wilson—which is likely given that she only recently reached the age of majority—Defendant also may inadvertently come within 1,000 feet of her when he is picking up or visiting his child. As a result, this Court believes a no-contact order with respect to J.T. without further specification is sufficient but not greater than necessary given the circumstances present here.

**ACCORDINGLY**, the undersigned recommends to the District Court that the Government's Motion for a no-contact order be **DENIED** with respect to Amina Wilson and **GRANTED** with respect to J.T. (whose full name is present in the record). The undersigned does not recommend inclusion of any 1,000-foot limitation or specification in the order.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Donald L. Graham, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 26th day of April, 2018.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE